UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:06CV-070-M**

**JOHN DOE**                                                                                                             **PLAINTIFF**

**VS.**

**DARREN GOSSAGE, In his official capacity**
**as Principal of Russell County High School**                     **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the Court upon motions by Plaintiff, John Doe, for a temporary restraining order [DN 3] and for a preliminary injunction [DN 4]. A hearing was held on May 18, 2006, on the Plaintiff's motion for a temporary restraining order, and after consideration of the relevant case law, the Court entered a temporary restraining order prohibiting the Defendant from allowing prayer at the high school graduation ceremony. The following is the rationale for the Court's decision.

### I. BACKGROUND

This case concerns the constitutionality of student prayer at a high school graduation ceremony. The Plaintiff in this case, John Doe[1], seeks both a temporary restraining order and a preliminary injunction enjoining Defendant, Darren Gossage ("Principal Gossage"), the Principal of Russell County High School ("RCHS"), from allowing prayer at the school's

---

[1] The Plaintiff in this case has made a motion asking to be identified only by the pseudonym of John Doe for fear of reprisal against him and his family [DN 5]. Defendant does not oppose this motion, and, thus, the Court grants Plaintiff's motion.

upcoming graduation ceremony.

Each year, the RCHS school year concludes with a commencement ceremony for graduating seniors in the high school gymnasium. The Plaintiff in this case is a graduating senior. The Plaintiff alleges that in the past, the graduation ceremony has included prayers which tend to be sectarian in nature, with references to God and Jesus Christ. The prayers are delivered by a Student Chaplain, who has traditionally been elected in the Fall of each year. The parties disagree as to the role of the Student Chaplain. Plaintiff argues that the Student Chaplain is elected for the sole reason to give a prayer at the graduation. Defendant contends that the Student Chaplain has other responsibilities throughout the school year but concedes that the Student Chaplain has traditionally given an invocation, benediction, or devotion at graduation ceremonies in prior years. This Fall, the seniors at RCHS elected Megan Chapman ("Chapman") as their Student Chaplain.

Plaintiff claims to be deeply offended by the practice of school sponsored prayer at graduation. Plaintiff's counsel contacted the Russell County School Board prior to filing this action and asked it to remove prayer from the graduation ceremony. The School Board declined to interfere, stating that such a decision should be made by the high school or the site-based council.

The Plaintiff brought suit on May 16, 2006. In Plaintiff's claim for relief under 42 U.S.C. § 1983[2], Plaintiff argues that the inclusion of a religious invocation, benediction, or

---

[2] 42 U.S.C. § 1983 states in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State...subjects or causes to be subjected, any citizen...to the deprivation of any rights, privileges, or immunities secured by the Constitution...shall be liable..."

-2-

prayer at commencement ceremonies constitutes an "unconstitutional establishment of religion" in violation of Plaintiff's rights secured by the First and Fourteenth Amendments to the U.S. Constitution.[3] Plaintiff also argues that such an inclusion would deprive him of rights secured by §5 of the Kentucky Constitution.

At the hearing held on May 18, 2006, the Defendant advised that there had been a change from the past practice as alleged by the Plaintiff. The Court was advised that earlier in the day, the students of RCHS decided by a majority vote that it wished to have a student representative give a brief opening and/or closing message at the high school graduation. The students then elected a speaker to make the remarks. The students again selected Chapman, the Student Chaplain. Defendant argued that neither the principal nor any other school official attempted to influence the class decision to have a representative of the senior class participate in the graduation exercises or to influence the decision of the senior class regarding the representative who would make such remarks. Furthermore, the Defendant stated that neither the principal, nor any other school official, attempted to influence the speaker with regard to the content of the remarks to be made at graduation exercises.

## II. STANDARD OF REVIEW

To determine whether to grant a temporary restraining order or a preliminary injunction, a district court must consider: (1) whether the movant has a 'strong' likelihood

---

[3]The First Amendment provides in relevant part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., Amdt. 1. The Religion Clauses apply to the States by incorporation into the Fourteenth Amendment. Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 8, n.4 (2004).

of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether its issuance would cause substantial harm to others; and (4) whether the public interest would be served by its issuance. Summit County Democratic Central and Executive Comm. v. Blackwell, 388 F.3d 547, 550 (6th Cir. 2004). The four factors should be applied in a flexible manner, but courts have recognized the likelihood of success on the merits as one of the most significant factors in determining appropriateness of injunctive relief. Gibson v. Sallee, 648 F. Supp. 54, 56 (M.D. Tenn. 1986).

### III. DISCUSSION

**A. Likelihood of Success on the Merits**

In this case, Plaintiff cites two Supreme Court cases, Lee v. Weisman, 505 U.S. 577 (1992) and Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290 (2000), in support of the contention that the inclusion of prayers at a public high school commencement ceremony violates the Establishment Clause of the First Amendment to the U.S. Constitution.[4] In Lee, the principal of a public middle school invited a rabbi to deliver the invocation and benediction at the school's graduation. Id. at 581. In ruling the prayer unconstitutional, the Court's opinion noted two controlling factors: (1) the offering of a prayer at school graduation ceremonies constituted a "state-sponsored religious activity" and (2) although not required, attendance at the ceremonies was "in a fair and real sense obligatory." Id. at 586-

---

[4] In Lemon v. Kurtzman, the Supreme Court set forth the basic test for determining whether a state action violates the Establishment Clause. 403 U.S. 602, 612-13 (1971). Under Lemon, the government has violated the Establishment Clause if: (1) the purpose of the state action is to aid or promote religion; (2) the primary effect of the action is to aid or promote religion; or (3) the result is excessive entanglement with religion. Id. This framework guides our inquiry of the Plaintiff's likelihood of success on the merits.

588. The Court found that "[t]he question is not the good faith of the school in attempting to make the prayer acceptable to most persons, but the legitimacy of its undertaking that enterprise at all when the object is to produce a prayer to be used in a formal religious exercise which students, for all practical purposes, are obliged to attend." Id. at 588-89.

In Santa Fe, the Court considered the issue of whether a school's policy permitting student-led, student-initiated prayer at football games violated the Establishment Clause. Id. at 301. The policy allowed students to vote on whether a student speaker would deliver an "invocation and/or message" prior to each home football game. Id. at 305. The Court held that the policy permitting the student body to select by majority vote a student to deliver a "statement or invocation" prior to high school football games facially violated the Establishment Clause. Id. at 317.

In so holding, the Court in Santa Fe considered several factors. First, the Court was not persuaded that the pre-game invocations were private speech, stating that "these invocations are authorized by a government policy and take place on government property at government-sponsored school-related events." Id. at 302. The Court found that mention of the term invocation in the policy "by its terms, invites and encourages religious messages." Id. at 306. "When a government entity professes a secular purpose for an arguably religious policy, the government's characterization is, of course, entitled to some deference. But it is nonetheless the duty of the courts to distinguish a sham secular purpose for a sincere one." Id. at 308 (internal quotation omitted). In so doing, the Court in Santa Fe examined the text and history of the policy, as well whether an objective listener would

perceive that any prayer was stamped with the school's approval, to conclude that prayer was impermissibly encouraged by the school. Id.

The Court also noted that the desires of the minority were not respected by the democratic process, reasoning that the "student election does nothing to protect minority views but rather places the students who hold such views at the mercy of the majority." Id. at 305. This is problematic as "fundamental rights may not be submitted to vote; they depend on the outcome of no elections." Id. (citing West Virginia Bd. of Ed. v. Barnette, 319 U.S. 624, 638 (1943)). The Court even went so far as to indicate that the majoritarian aspect of the policy alone rendered it unconstitutional:

> This policy likewise does not survive a facial challenge because it impermissibly imposes upon the student body a majoritarian election on the issue of prayer. Through its election scheme, the District has established a governmental electoral mechanism that turns the school into a forum for religious debate. It further empowers the student body majority with the authority to subject students of minority views to constitutionally improper messages. The award of that power alone, regardless of the students' ultimate use of it, is not acceptable. Like the referendum in Board of Regents of Univ. of Wis. System v. Southworth, 529 U.S. 217, 146 L. Ed. 2d 193, 120 S. Ct. 1346 (2000), the election mechanism established by the District undermines the essential protection of minority viewpoints. Such a system encourages divisiveness along religious lines and threatens the imposition of coercion upon those students not desiring to participate in a religious exercise. Simply by establishing this school-related procedure, which entrusts the inherently nongovernmental subject of religion to a majoritarian vote, a constitutional violation has occurred. No further injury is required for the policy to fail a facial challenge.

Santa Fe, 530 U.S. at 316-17.

Reading Lee and Santa Fe together, the logical conclusion is that any affirmative state action to promote graduation prayers is unconstitutional. The Defendant's past practice of

allowing a Student Chaplain to give invocations and benedictions at the graduation ceremony clearly violates the Establishment Clause. However, the Defendant argues that the new policy does not violate the applicable Supreme Court precedent. Defendant candidly admits that the changes were made to fit within the confines of an Eleventh Circuit case which held that a neutrally worded policy which could in practice allow for graduation prayer by students did not offend the Establishment Clause. Adler v. Duval County Sch. Bd., 250 F.3d 1330 (11th Cir. 2001) (en banc), cert. denied, 534 U.S. 1065 (2001). The new policy allows for Russell County High School graduating seniors to vote on whether to have opening and closing remarks, instead of an invocation and benediction. Furthermore, the policy allows for the senior students to vote on the student representative to give the remarks. Although this Court is not bound by the decisions of the Eleventh Circuit, the task is to determine whether the new Russell County High School policy is constitutional in light of Lee and Santa Fe. Since the two policies are similar, it is appropriate to consider the rationale of the Adler decision.

In Adler, the Eleventh Circuit examined the constitutionality of the following policy adopted by the Duval County School Board:

> 1. The use of a brief opening and/or closing message, not to exceed two minutes, at high school graduation exercises shall rest within the discretion of the graduating senior class;
>
> 2. The opening and/or closing message shall be given by a student volunteer, in the graduating senior class, chosen by the graduating senior class as a whole;
>
> 3. If the graduating senior class chooses to use an opening and/or closing message, the content of that message shall be prepared by the student volunteer and shall not be

>monitored or otherwise reviewed by Duval County School Board, its officers or employees;
>
>The purpose of these guidelines is to allow students to direct their own graduation message without monitoring or review by school officials.

Id.

The Eleventh Circuit first decided Adler in March of 2000, only a few months before the Supreme Court decided Santa Fe. Adler v. Duval County Sch. Bd., 206 F.3d 1070 (11th Cir.) (en banc), pet. for cert. granted and judgment vacated, 531 U.S. 801 (2000). Adler was then appealed to the Supreme Court. The Supreme Court vacated the decision and remanded it for further consideration in light of their decision in Santa Fe. On remand, the Eleventh Circuit distinguished the facts in Adler and decided not to alter its previous en banc decision despite Santa Fe. Adler, 250 F.3d at 1332.

The Adler court found its facts distinguishable from those in Santa Fe in two significant respects. First, the speech in Santa Fe was subject to specific regulations which confined its content. Id. at 1336. In the Duval County policy, the school officials did not monitor or review the content. Second, the policy at issue in Santa Fe, "by its terms, invites and encourages religious messages." Id. (quoting Santa Fe, 530 U.S. at 306). In contrast, the Duval County policy refers to "messages" only, not invocations or benedictions.

After reviewing Adler, this Court is not persuaded that the noted distinctions are sufficient to avoid the constitutional concerns. Those concerns are aptly pointed out by the dissenters in Adler.

Judge Kravitch's dissent in Adler argued that the Duval County policy was facially

-8-

unconstitutional in light of Santa Fe. Most significantly, his dissent noted that "the Santa Fe Court explicitly determined that the election mechanism in the District's policy did not render the policy immune to constitutional scrutiny." Adler, 250 F.3d at 1343 (citing Santa Fe, 530 U.S. at 304-05). His dissent continued,

> The Supreme Court's decision on this issue renders untenable the majority's position that the Duval policy survives constitutional scrutiny because the school board "did not have control over the elements which are most crucial in the Establishment Clause calculus: the selection of the messenger, the content of the message, or most basically, the decision whether or not there would be a message in the first place." Adler, 206 F.3d at 1080. The majority's reasoning ignores the fact that Duval's "majoritarian election might ensure that most of the students are represented, but does nothing to protect the minority." See Santa Fe, 530 U.S. at 305, 120 S. Ct. 2266. Indeed, the very mechanism that the majority of this Court claims removes any impermissible coercion from the Duval policy serves to silence students espousing minority views, and forces them to participate in a state-sponsored exercise in which the message is determined by students holding majority views. The First Amendment does not permit such coercion.

Id. at 1344.

Judge Kravitch then discussed the distinctions between the policies in Santa Fe and Adler but ultimately concluded that such distinctions should not yield a different conclusion. Id. The first distinction concerned the forum, football games in Santa Fe and a graduation in Adler. His dissent interpreted Santa Fe to conclude that graduation prayers are more offensive to the Establishment Clause than are prayers at football games because "we may assume that...the informal pressure to attend an athletic event is not as strong as a senior's desire to attend her own graduation ceremony." Adler, 250 F.3d at 1344 (quoting Santa Fe, 530 U.S. at 311). A second distinction was that the policy in Santa Fe provided for a

"statement or invocation," while the Duval policy provided for a "message." Adler, 250 F.3d at 1344. His dissent argued that such a distinction should not allow the Duval policy to survive Establishment Clause scrutiny "because such scrutiny must include an examination of the policy's purpose, history, and the context in which it was adopted to determine whether the policy has a permissible secular purpose or an impermissible religious one." Id. (citing Santa Fe, 530 U.S. at 308). Judge Kravitch concluded, "[b]ecause the record reflects that the purpose of the Duval policy is to endorse prayer at graduation ceremonies, and because the scheme allowing the student majority to decide whether to include prayer does not cure the problem of the policy's impermissible, religious purpose," the policy "impermissibly coerced students to participate in a religious exercise chosen by the majority of the graduating class." Id. at 1346-47.

In a separate dissent, Judge Carnes further highlighted why Santa Fe should have rendered the Duval County policy unconstitutional. He stated that, "Santa Fe makes clear what should have been apparent all along: the messenger is not autonomous from the majority who chooses her any more than a political figure is autonomous from the majority who selects him." Id. at 1348. Judge Carnes further elaborated,

> The majority of the senior class selects and endorses the message because the majority selects the messenger. All the majority has to do to ensure that a religious message is delivered at graduation is select as its messenger one whom it can rely upon to give such a message. There is no reason at all to believe that will be difficult to do…It would be naive to expect the debate over the first question subjected to majority rule by the Duval County policy not to include discussion about whether there should be prayer…Prayer is what a majority of people expect and usually want to hear at graduation. Once the majority will is expressed in favor of a student-delivered message, all the

> majority has to do to ensure that message includes prayer is select someone who can be counted upon to deliver a prayer.

Id. at 1349.

In his conclusion, Judge Carnes drove home the point that the majoritarian aspect of the Duval policy should have been enough to render it unconstitutional in light of Santa Fe:

> By majority vote, the students direct their own graduation message by deciding whether there will be one and who will deliver it. And in that way a majority of the senior class determines whether its message will be prayer. The school board policy not just permits but invites that determination by the majority regardless of the views of the minority. As interpreted in Santa Fe, the Establishment Clause forbids that type of exercise of majority power. Government is not allowed to aid in the establishment of religion by giving a majority of students a proxy to use government power to do that which government itself may not do.

Id. at 1350.

In ACLU v. Black Horse Pike Regional Bd. of Educ., 84 F.3d 1471 (3d Cir. 1996), the Third Circuit considered, and ultimately rejected, a school board's alteration of a policy in an attempt to comply with Lee. Id. at 1474-75. That policy provided for an election in which students determined whether or not they wanted to have prayer at their graduation. Id. at 1475. The court noted that "[a]n impermissible practice can not be transformed into a constitutionally acceptable one by putting a democratic process to an improper use." Id. at 1477.

The Supreme Court in Santa Fe addresses at length two fundamental problems with the policy at issue in that case: its reliance on a majority vote and the context in which the policy arose. Here, the Russell County policy suffers from both of those fatal defects. First,

-11-

the new policy provides for a student election.  It came as no surprise to anyone that the majority elected Megan Chapman as the graduation speaker.  She was the same person who had been elected Student Chaplain at the beginning of the year.  The traditional role of the Student Chaplain includes giving an opening and closing prayer at the graduation ceremony.  The selection of a speaker by majority vote, rather than by a purely secular criteria, simply allows the majority to ensure that prayer will be given at a school sponsored event.

Second, the majoritarian election is even more problematic when one considers both the context in which RCHS adopted its new policy and the context in which the "remarks" will be made.  The evidence shows that RCHS has had a history of prayer at its graduation ceremonies.  The senior class had elected a Student Chaplain for just that purpose.  Despite the hands-off approach as to the content of the remarks, the school officials still maintain certain control over the ceremony.  Graduation is a school sponsored event, held on school property and, presumably, paid for with school funds.  "The delegation of one aspect of the ceremony to a plurality of students does not constitute the absence of school officials' control over the graduation." Black Horse Pike Regional Bd. of Educ., 84 F.3d at 1479.  The change in policy was only implemented after this suit was filed.  It appears to be nothing more than a poorly disguised attempt to ensure that prayer will continue to be a part of the graduation program.  An objective listener would no doubt find any prayer given in this context to be stamped with the approval of the school.

The new policy also does nothing to eliminate the fact that a minority of students are impermissibly coerced to participate in a religious exercise chosen by the majority of the

graduating class. As Judge Carnes noted in his dissent in Adler, the government is not allowed to aid in the establishment of religion by giving a majority of students a proxy to use government power to do that which the government itself may not do.

For the foregoing reasons, the Court finds that the Plaintiff has demonstrated a likelihood of success on the merits.

### B. Irreparable Harm

A movant who makes a strong showing of likelihood of success on the merits is entitled to a presumption of irreparable harm. Shane Group v. Bci Burke Co., No. 1:02-CV-58, 2002 U.S. Dist. LEXIS 25955, at *23 (W.D. Mich. Aug. 12, 2002) citing Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc., 134 F.3d 1085, 1090 (Fed. Cir. 1998)). Here, Plaintiff has made a strong showing of likelihood of success on the merits, and he is thus entitled to a presumption of irreparable harm. Moreover, the loss of First Amendment freedoms, for even a minimal period of time, unquestionably constitutes irreparable injury. Elrod v. Burns, 427 U.S. 347, 373 (1976).

### C. Substantial Harm to Others

The Defendant has no legally protected interest in promoting messages of religious content at a school-sponsored graduation ceremony. Thus, the Court finds that others will not suffer harm by the issuance of a temporary restraining order.

### D. Public Interest

The public interest in this case will be benefitted by a decision which properly applies the Establishment Clause. An incorrect application of the constitution to such a sensitive

dispute would not be in the best interest of either party.  After all, "[t]he First Amendment does not allow the state to erect a policy that only respects religious views that are popular because the largest majority can not be licensed to impose its religious preferences upon the smallest minority."  <u>Black Horse Pike Regional Bd. of Educ.</u>, 84 F.3d at 1488.

### E. Balancing of the Factors

All of the factors supports the Plaintiff's motion, and the Court thus finds that the balancing of the equities favors the Plaintiff.  Having granted the Plaintiff's motion for a temporary restraining order on federal law grounds, the Court need not consider Plaintiff's arguments in light of §5 of the Kentucky Constitution.

### IV. CONCLUSION

For the foregoing reasons, the Plaintiff's motion for a temporary restraining order [DN 3] was **GRANTED**.


Copies to: Counsel of Record
06cv-070Doe1